cases the court says that it was necessary to prove that the defendant knew of it. But that was said because the defendant was one of the parties to the transaction. Undoubtedly, the liability thus created is a grave one, and it may in some cases, as possibly it did in this case, work an injustice to the individual stockholder. But it is within the plain construction of the statute, and therefore it cannot be escaped.

So far as the motion for a new trial in this case is made upon the ground of newly-discovered evidence, the papers are fatally defective. There is no statement anywhere in the papers of what the newly-discovered evidence is, except the paper which is said to be in the handwriting of Pitt, stating that there was a small amount of money on hand when a dividend was declared, at a time when he swore there was no money in the treasury of the company. But, if it could be assumed that this paper established that fact, it would be a matter of no importance whatever. If the fact had appeared, according to the statement in the paper, there is no probability that it would have changed the result of the trial; and, if it should be made to appear upon a new trial, I cannot see how it would have any effect whatever. There is no statement of any other evidence which was newly discovered.

The defendant also asks for a new trial upon the ground that the jury misunderstood the charge of the court, and that their verdict was based upon such a misunderstanding. To this part of the motion there are several serious objections. In the first place, there is no competent evidence to prove the fact. If the affidavits of the jurors had been offered to establish that their verdict proceeded upon a mistaken view of the law, they could not have been read. Clum v. Smith, 5 Hill, 560. Nor can such facts be established by the declarations of the jurors, made after the verdict had been rendered, to other persons who embody them in an affidavit. Mitchell v. Carter, 14 Hun, 448. But, passing that objection, it is very clear that no intelligent person could have misunderstood the direction given the jury. The charge upon the point referred to was clear, and was reiterated; and it appears, from the testimony of one of the jurors, not only that he made no such declaration as is stated in the affidavits, but that the jury did understand the charge of the court, and based their verdict upon the directions which they received.

Argued before DWIGHT, P. J., and LEWIS, BRADLEY, and WARD, JJ.

W. Martin Jones, in pro. per.
David Hays, for respondent.

PER CURIAM. Judgment and order affirmed, on opinion of Rumsey, J., at circuit.

---

## NEW YORK CENT. & H. R. R. CO. v. DAVIS.

(Supreme Court, General Term, Fifth Department. April 12, 1895.)

1. PRINCIPAL AND AGENT—LIABILITY OF UNDISCLOSED PRINCIPAL.
    Defendant delivered coal to the L. R. Co., to be transported to a point on plaintiff's line, which connected with the L. road. The consignee had no interest in the coal, but merely handled it at his docks for defendant, charging him a certain sum per ton. The contract with the L. Co. only required it to transport the coal to the point at which its road connected with that of plaintiff, and to request plaintiff to transport it thence to its destination. *Held,* that the L. Co. was defendant's agent for the purpose of delivering the coal to plaintiff, and requesting its transportation from the connecting point, and the fact that plaintiff at the time did not know that defendant was owner of the coal was immaterial.

2. CARRIERS—LIEN FOR FREIGHT—DELIVERY TO CONSIGNEE.
    On an issue as to whether a carrier, by delivery to the consignee, had lost his lien for freight, it appeared that the car loads of coal on which the

lien was claimed were, on reaching their destination, placed on spur tracks on the consignee's premises, he furnishing the ties, while the railroad company built the tracks and furnished the iron. The spur tracks were operated exclusively by the railroad company, and part of its charge was for placing the coal on the spur track. Before the consignee could handle the coal, it was necessary to remove the cars from the spur track, and move them along the main track, thence along a branch track on the consignee's premises to his docks, and this was done by an engine and crew of the railroad company, which its superintendent furnished on request. *Held*, that placing the cars on the spur tracks was not a delivery of the coal, so as to deprive the railroad company of its lien for freight.

3. SAME—PARTIAL DELIVERY.

Delivery of a portion of the goods on which the carrier has a lien for freight does not discharge the lien on the portion not delivered.

Appeal from judgment on report of referee.

Action by the New York Central & Hudson River Railroad Company against Andrew J. Davis and others. There was a judgment in favor of plaintiff, and defendant Davis appeals. Affirmed.

The opinion of P. M. French, Esq., to whom the cause was referred, is as follows:

The plaintiff is a common carrier of goods, among other places between Lyons and Charlotte Docks, in the state of New York. The defendant Andrew J. Davis is a producer, a miner and shipper of coal, owning the mines known as the Warrior Run Colliery, near Wilkesbarre, in the state of Pennsylvania. In the months of March and April, 1893, the defendant Davis shipped from his said mines to Charlotte Docks two thousand four hundred and twenty tons (2,420) and twelve hundred weight (12 cwt.) of coal, which was consigned to the defendant Arthur G. Yates. Although Mr. Yates was the consignee, he was not the owner of the coal, and had no interest in it. It was sent to him by the owner, Mr. Davis, as had been done for several years before, for what was known between them as "stocking purposes,"—i. e. to be retained by Mr. Yates until Mr. Davis should sell it, when it was to be forwarded in vessels loaded from Mr. Yates' docks, and for which service Mr. Yates was to be paid by Mr. Davis a handling charge of thirty cents ($.30) per ton; and the question presented is precisely the same as though the coal had been consigned by the defendant Davis to himself. The coal in question was by the defendant Davis, at his said mine, delivered to the Lehigh Valley Railroad Company, which is also a common carrier of goods, having a line connecting with the plaintiff's line at Lyons, and upon the delivery of such coal he received from the Lehigh Valley Railroad Company a manifest, dated at the Warrior Run Colliery, in the following language: "Shipped by A. J. Davis, per Lyons and N. Y. C. Railroads, the following cars of coal to be delivered to A. G. Yates, at Charlotte Docks," and then follow the car numbers with the total tonnage. The Lehigh Valley Railroad Company transported the coal in question to Lyons, and there delivered it to the plaintiff with the request that it be carried thence to Charlotte Docks, which service was performed, and for which the plaintiff has received no compensation. Although nearly 200 typewritten pages of evidence have been taken, and exhibits by way of manifests and waybills have been offered in evidence until, in their marking, the alphabet has been more than exhausted, the question, so far as this branch of the case is concerned, seems to me to be elementary and very simple. It is evident from the manifests that the defendant Davis requested the Lehigh Valley Railroad to transport this coal to Lyons, and to request the plaintiff to transport it from there to Charlotte Docks, and the service so requested has been performed. For the purpose of delivering the coal to the plaintiff at Lyons and requesting its transportation to Charlotte Docks, the Lehigh Valley Railroad Company was the owner's agent, and the situation is the same in that respect as though the owner had personally delivered the coal to the plaintiff, and requested the plaintiff to carry it. The law at once, upon such request and service, implies a promise upon the part of the shipper, the defendant Davis, who

was the owner of the coal, to pay to the plaintiff whatever such service is reasonably worth, which the evidence shows to be forty cents ($.40) per ton, making for the coal so transported the sum of nine hundred sixty-eight dollars and twenty-four cents ($968.24), a demand for which was made upon the defendant Davis before the 1st of May, 1893, and for which sum, with interest from May 1, 1893, the plaintiff is entitled to judgment against him. The fact that the plaintiff at the time of performance did not know the owner's name, and had no personal dealings with him concerning the transaction, in no way affects the question. It dealt with the agent of an undisclosed principal, and as soon as the identity of the principal was discovered it was the plaintiff's undoubted right to look to him for a fulfillment of the contract so made pursuant to his authority.

The other branch of this case presents a question which to my mind is much more difficult of solution. The plaintiff seeks in this action also to enforce its lien for carriage upon the coal so carried. No question has been raised concerning the misjoinder of causes of action, but the parties have tried both causes of action together. The difficulty occurs in determining whether the coal has been delivered to the consignee, Mr. Yates. At the time of this transaction Mr. Yates was the owner of property known as "Charlotte Docks," situate near the village of Charlotte, upon the left bank of the Genesee river, and comprising between eight and nine acres of land, adjoining the plaintiff's right of way. At that point the river bank is about twelve hundred feet (1,200) easterly from the main track of the plaintiff leading from Rochester to Charlotte. Mr. Yates was, and for many years had been, a very large dealer in coal, and for the purpose of handling it it was found necessary to build certain spurs, or, as they have been called in the evidence, "stub tracks," leading from the plaintiff's main line on to the said real estate owned by Mr. Yates, upon which tracks the coal in question was placed by the plaintiff, and there remained up to the time of the commencement of this action. The tracks are seven (7) in number, and were built upon land owned by Mr. Yates. The land and ties were furnished by him, and the iron was furnished by the plaintiff. The tracks were to be maintained from time to time by the furnishing of ties by Mr. Yates, and the furnishing of the iron by the plaintiff. They were operated solely by the plaintiff, and a part of the charge of forty cents ($.40) for transporting the coal from Lyons to Charlotte Docks included not only the placing the coal upon these tracks, but also from time to time, as it was needed at the docks, transporting it from these tracks to the docks proper. The stub tracks connected with the main line of the plaintiff's road at their northerly end, and led thence southerly and easterly, and terminated before reaching the coal docks; and the only way that the coal could be transported from them to the coal docks was by drawing the cars northerly upon the right of way of the plaintiff, and thence transporting them southerly and easterly upon another track which led directly to the docks. From time to time as this coal was wanted at the docks, Mr. Yates or his superintendent would so inform the plaintiff's agent, and the plaintiff's engine and crew would draw the cars from the stub tracks on to the plaintiff's right of way, and thence to and on to the tracks leading to the coal docks at the river bank. Of course, if placing the coal upon these stub tracks amounted to a delivery to Mr. Yates it was the same as a delivery to the defendant Davis, and the lien for carrying the coal would at once be lost. To constitute a waiver of lien, the delivery must be made with such intent, or it must be made under such circumstances that the law will presume the intent to have existed; and nothing must remain to be done by the carrier in order to fully perform its contract. This coal was transported to the point of destination and the cars containing it were disconnected from the engine which had drawn them. It stood on the stub tracks ready for delivery, just as other property more easily unloaded from the cars might have been stored in the railroad warehouse until the consignee should be ready to receive it. It thus stood ready for delivery within sight of the consignee's superintendent of the dock property, ready to be drawn on to the coal dock track when it was wanted there. I am unable to discover the act on the part of the plaintiff which shows an intent to waive its lien. The coal could not be unloaded at the docks, its final destination,

without plaintiff's further intervention, nor without the use of its engine and crew; something more for it to do still remained. I think, for the purposes of its lien, it must be held that the coal was still in the plaintiff's possession. A delivery may be complete for one purpose and not for another. Lane v. Railroad Co., 14 Gray, 143. All of this coal, except seven hundred twenty-six tons (726) and twelve hundred weight (12 cwt.) had, before the commencement of this action, been actually delivered to Mr. Yates and dumped from the cars at the river bank upon the coal docks, and as to the coal so delivered no claim for a lien could be sustained or is made, but a delivery of a part of the coal does not discharge the lien on the portion retained. If not waived, it remains attached to whatever part of the property carried may remain in possession of the carrier. Potts v. Railroad Co., 131 Mass. 456; Barker v. Brown, 138 Mass. 340–344. The plaintiff claims a lien upon this coal so upon the stub tracks, amounting to seven hundred and twenty-six tons (726) and twelve hundred weight (12 cwt.), only for its carriage, and not for the carriage of any other portion of the coal, and it is, therefore, unnecessary to determine what particular cars were included in each particular consignment. The defendant Davis insists that the plaintiff's lien for carrying this coal was lost, because it extended credit to Mr. Yates. I am unable to find from the testimony any agreement for such extension of credit. The business was conducted, the coal delivered, and the freight collected as such transactions are usually conducted when bulky articles are transported, and a little time must necessarily intervene between delivery and payment. Under such circumstances delivery and payment could only be practically concurrent; they could not be actually so. The evidence shows it was the habit of the station agent in charge of the Charlotte station to present at Mr. Yates' general office in the city of Rochester, on the 7th, 14th, 21st and last days of each month, bills for freight for the coal delivered during the 10 preceding weeks. That seems to have been the custom in the transaction of this business, adopted for the convenience of all parties concerned. I find from the testimony no agreement that the plaintiff should wait any length of time after delivery of coal before collecting its freight. If the defendant Davis is correct in his version of his conversations with the assistant general freight agent of the plaintiff at New York, there is no estoppel, for the reason that defendant Davis has done nothing, and has lost no rights which he had before, in reliance upon anything which he says was told him, or which was written to him by the assistant general freight agent. For the reasons stated above, it seems to me that the defendant, Davis, has failed to establish a defense to either cause of action, and the plaintiff is entitled to the relief asked for in the complaint.

Argued before DWIGHT, P. J., and LEWIS and BRADLEY, JJ.

J. B. M. Stephens, for appellant.

Albert H. Harris, for respondent.

PER CURIAM.     Judgment affirmed on the opinion of the referee.